```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x
In re:                              :

CANDELARIO VARGAS                   :    BK No. 07-10157
         Debtor                          Chapter 7

NORMAN PETTIGREW and
RUTH PETTIGREW                      :
         Plaintiffs
v.                                  :    A.P. No. 07-1042
CANDELARIO VARGAS and               :
PHOENIX FINANCIAL CORPORATION
         Defendants
- - - - - - - - - - - - - - - - - -x
```

### ORDER DENYING MOTION FOR PROTECTIVE ORDER

APPEARANCES:

    David C. Clarke, Esq.
    Attorney for Plaintiffs, Norman and Ruth Pettigrew
    Blais Cunningham & Crowe Chester
    150 Main Street
    Pawtucket, Rhode Island 02860

    Leon A. Blais, Esq.
    Attorney for Plaintiffs, Norman and Ruth Pettigrew
    Blais & Parent
    20 Cabot Boulevard, Suite 300
    Mansfield, Massachusetts 02048

    Peter A. Lawton, Esq.
    Attorney for Debtor/Defendant, Candelario Vargas
    160 Burnside Street
    Cranston, Rhode Island 02910

    Peter J. Furness, Esq.
    Attorney for Defendant, Phoenix Financial Corp.
    SINAPI FORMISANO & CO.
    100 Midway Place, Suite 1
    Cranston, Rhode Island 02920-5707

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

BK No. 07-10157; A.P. No. 07-1042

Heard on Ruth Pettigrew's Motion for Protective Order to prevent the taking of the deposition of Attorney Andrew Cagen.

### BACKGROUND

Candelario Vargas, who owned property in which he previously operated a small auto repair shop in Providence, Rhode Island, wished to expand his business. He contacted Jaime Aguayo to assist in finding a larger location. Aguayo put Vargas in touch with Norman and Ruth Pettigrew, the owners of commercial property located at 100-104 Aldrich Street, Providence, Rhode Island (the "Property"), regarding the acquisition of the Property. Negotiations were successful, and the Pettigrews sold the Property to Vargas for $205,000, with the Pettigrews taking back a note secured by two mortgages. Thereafter, Vargas applied to Phoenix Financial Corporation for funding to modify and upgrade the Property, and Phoenix agreed to lend $125,000, if Vargas executed a note secured by a first mortgage[1] on the Property, and provided Phoenix with "other security." The Phoenix mortgage closing was scheduled for August 3, 2005, and in preparation for the closing the Pettigrews met with Vargas, Aguayo and attorney Andrew Cagen, Esq., at Cagen's law office on August 1, 2005. The relationship

---

[1] Obviously, for Phoenix to receive a first mortgage on the Property, the Pettigrew first mortgage would have to be subordinated.

1

BK No. 07-10157; A.P. No. 07-1042

(vis-a-vis attorney/client) of the people who attended the August 1 meeting and the August 3 closing is unclear, and is the basis for the instant discovery litigation.

On August 20, 2007, the Pettigrews filed an adversary proceeding against Vargas under 11 U.S.C. § 523(a)(2), alleging that they were fraudulently induced by Vargas to subordinate their first mortgage,[2] and thereafter added Phoenix as a defendant. Phoenix commenced proceedings to depose Cagen, to inquire into facts relative to the Phoenix loan transaction, and with regard to statements made between Cagen and the Pettigrews at the August 1, 2005 Meeting, and at the closing. The Pettigrews filed a Motion for Protective Order to prevent Phoenix from deposing Cagen, on the ground that all testimony sought to be elicited from Cagen is covered by the attorney-client privilege. At issue is whether an attorney-client relationship existed between Pettigrew and Cagen which would prevent Cagen from testifying about the conversations had during the August 1, 2005 meeting, or the August 3, 2005, closing.

---

[2] Whatever transpired among the parties between August 1 and August 20, 2007 (the date of the Pettigrew Complaint) will be of interest later on, but is not relevant or dispositive of the resolution of the issue before the Court today.

2

BK No. 07-10157; A.P. No. 07-1042

**<u>DISCUSSION</u>**

It is unrefuted that Cagen represented Vargas (a defendant in the Pettigrews' adversary proceeding) regarding the Phoenix loan, relative to communications between Vargas, Cagen, Norman Pettigrew and Ruth Pettigrew.  Courts have consistently held that after they become adversarial, there is no attorney-client privilege as to communications with persons who formerly were joint clients. *F.D.I.C. v. Ogden Corp.*, 202 F.3d 454; See also *DeBold v. Case (In re Tri-River Trading, LLC.*, 329 B.R. 252, 268-269 (B.A.P. 8th Cir. 2005).  As Judge Selya, in *F.D.I.C.*, explained,

> When two or more persons, each having an interest in some problem, or situation, jointly consult an attorney, their confidential communications with the attorney, though known to each other, will of course be privileged in a controversy of either or both of the clients with the outside world, that is, with parties claiming adversely to both or either of those within the original charmed circle. But it will often happen that the two original clients will fall out between themselves and become engaged in a controversy in which the communications at their joint consultation with the lawyer may be vitally material. In such a controversy it is clear that the privilege is inapplicable.

*Id*. at 461 (*quoting* Kenneth S. Broun et al., *McCormick on Evidence* § 91 at 335-36 (4th ed. 1992).

So assuming, for the purpose of this discussion, that Cagen at some time represented both Pettigrew and Vargas, any attorney-client privilege that existed at the time of the August 1, 2005

3

BK No. 07-10157; A.P. No. 07-1042

Meeting or the August 3, 2005 closing, ended when the interests of Vargas and Pettigrew became adversarial.

Accordingly, the Motion for Protective Order is **DENIED**.

Dated at Providence, Rhode Island, this    9th    day of January, 2009.

                                               Arthur N. Votolato
                                               U.S. Bankruptcy Judge

Entered on docket: 1/9/08